Hast, J.
The question presented is whether, in order to constitute constructive notice to subsequent purchasers of land of an instrument in the general form of a deed but conveying to the grantee oil and gas in and under such land, with the right and privilege of operating upon the land to obtain the oil and gas and with the right and privilege to lay pipe over the land to transfer the oil and gas to pipe lines, and granting the right to hold the oil and gas rights forever, such instrument should be recorded in the record of ieases under the provisions of Sections 8518 and 8519, General Code, or in the record of deeds under the provisions of Sections 2757 and 8543, General Code.
The pertinent portions of the instrument conveying the oil and gas rights in the premises in question to the gas company’s assignor are as follows:
nit#we*** the grantors, for the consideration of three hundred dollars * * * do give, grant, bargain, sell and convey unto the said grantee, its successors and assigns, all the oil and gas in and under the following described premises. * * #
i i # # *
‘ ‘ Said grantors further give, grant, bargain, sell and convey unto the said grantee, its successors and assigns, the right and privilege of operating upon the said premises as aforesaid for the obtaining of such oil and gas, with the right to use water therefrom, and all the rights and privileges necessary or convenient for conducting said operations, and all the rights and privileges to lay pfpes over and across such premises as aforesaid in order to transport such oil and gas to pipe lines. * * *
*84 < < * * *
“To have and to hold the above granted and bargained oil and gas rights, with the appurtenances thereunto belonging, unto the said grantee, its successors and assigns, forever.
“And we * * * covenant with the said grantee, its successors and assigns, that * * * we are well seized of the oil and gas rights in, upon and under the above described premises * # * and have good right to bargain and sell the same * * * and that we will warrant and defend the said grant as aforesaid to the said grantee, its successors and assigns forever * * *
“And we * * * do hereby remise, release and forever quit claim unto the said grantee, its successors and assigns, all our right and title of dower * * * as relating to the said oil and gas rights and privileg.es herein granted.” (Italics supplied.)
The pertinent parts of the applicable statutes making provision for the recording of leases are as follows :
Section 2757. “* * * fifth, a record of leases, in which shall be recorded all leases. All instruments entitled to record shall be recorded in the proper record in the order in which they are presented for record. ’ ’ Section 8518. “All leases and licenses and assignments thereof, or of any interest therein, given or made, for, upon, or concerning lands or tenements in this state, whereby any right is given or granted to operate, or to sink or drill wells thereon for natural gas and petroleum or either, or pertaining thereto, shall be filed for record, forthwith, and recorded in such lease record, without delay * *
The pertinent parts of the applicable statutes making provision for the recording of deeds are as follows: Section 2757. “The recorder shall keep five separate sets of records, namely: First, a record of deeds, in which shall be recorded all deeds and other instru *85 ments of writing for the absolute and unconditional sale or conveyance of lands, tenements and hereditaments * * (Italics supplied.)
Section 8543. “All other deeds and instruments of writing for the conveyance or incumbrance of lands, tenements, or hereditaments, executed agreeably to the provisions of this chapter, shall be recorded in the office of the recorder of the county in which the premises are situated, and until so recorded or filed for record, they shall be deemed fraudulent, so far as relates to a bona fide purchaser having, at the time of purchase, no knowledge of the existence of such former deed or instrument.”
Counsel for the gas company, in their brief, frankly say:
“It is clear upon the face of the statutes that they provide for the method of recording two types of instruments namely (a) leases and (b) licenses (together with assignments thereof or of any interests therein) # # #
“Admittedly, the instrument in question is not a ‘lease’ because it grants rights in perpetuity, reserves nothing in the nature of rent, and the rights granted are not subject to defeasement upon the happening of any conditions. But if it is a ‘license * * * to operate * * * for natural gas and petroleum or either’ it is within the statute and should be recorded in the lease record, even though not a lease in form.
6C * # *
“No question is made by the appellee about the general form of the instrument in question. It has all the attributes of a deed, viz: language of grant, bargain and sale, habendum, warranty, release of dower, etc., and is made in perpetuity, i. e., to the grantee, its successors and assigns.
“On the other hand no question should be made as to the fact that the instrument does on its face grant *86 a license to operate on the lands to which it relates for oil and gas.”
The character of the instrument of conveyance reveals that it is other than a grant of real property. Possession of oil and gas, having as they do a migratory character, can be acquired only by severing them from the land under which they lie, and in effect the instrument of conveyance in the instant case is no more than a license to effect such a severance. The very sale of oil and gas, separate and apart from the real estate surface, constitutes, in law, a constructive severance such as occurs in the case of sale of standing timber or growing crops.
The instrument of conveyance, as a whole, bears the earmarks of a license. It grants operating privileges on the land surface, just as would be necessary to remove standing timber or growing crops in a sale thereof. In the habendum clause of the instrument here, which measures the estate granted, the interests granted or conveyed are designated as “the above granted and bargained oil and gas rights, with the appurtenances thereunto belonging, ’ ’ and are not characterized as oil and gas in place. Likewise, the covenant of seizin and warranty relates solely to “the oil and gas rights in, upon and under the said above described premises.” It is significant, also, that when the parties chose to transfer an interest granted under the original instrument of conveyance they did so by a mere assignment of the instrument and not by a new and subsequent deed which would be necessary in case real property was being transferred.
As a matter of fact, many authorities hold that the owner of the land surface does not own any oil or gas which may be “in place” thereunder. The position of such authorities is that the owner has the exclusive right to drill wells on his premises for these minerals *87 and to take the products of such wells as his own personal property from whatever source they may come to such wells.
On this subject, 24 American Jurisprudence, 520, Section 4, says:
“* * * there are many decisions which declare that gas and oil in place belong to the owner of the land and that he can convey or incumber them in the same manner as any other mineral estate, subject, of course, to the possibility of their escape and a resultant loss of title. Although this view has been adopted in a number of jurisdictions, it has been severely criticized, and in most of the producing states the courts hold that gas and oil in situ are not subject to absolute ownership [Callahan v. Martin, 3 Cal. (2d), 110, 43 P. (2d), 788, 101 A. L. R., 871; Kolachny v. Galbreath, 26 Okla., 772, 110 P., 902, 38 L. R. A. (N. S.), 451; LaLagwia Ranch Co. v. Dodge, Admr., 18 Cal. (2d), 132, 114 P. (2d), 351, 135 A. L. R., 546, 550; Jilek v. Chicago, Wilmington & Franklin Coal Co., 382 Ill., 241, 47 N. E. (2d), 96, 146 A. L. R., 871, 880], that the land owner’s only right is to extract them, and that he has no title to them until he does so. This means, of course, that he cannot convey them in place and that there can be no ownership of them separate or distinct from the land.”
Cited as supporting the later doctrine of ownership as expressed in the text are the cases of Kelley v. Ohio Oil Co., 57 Ohio St., 317, 49 N. E., 399, 63 Am. St. Rep., 721, 39 L. R. A., 765; and Nonamaker v. Amos, 73 Ohio St., 163, 170, 76 N. E., 949, 112 Am. St. Rep., 708.
In the case of Nonamaker v. Amos, supra, the question involved was whether the amount of royalty to be paid to the land owner for oil and gas produced under a written instrument could be changed by parol agreement between the parties. The land owner claimed *88 that such parol agreement was void because it related to an interest in or concerning land. The court in the course of its opinion said:
“It is claimed for the lessor who commenced the action under review, that, (1) the parol contract relied on relates to an interest in or concerning land; and, (2) that the contract was not to be performed within the space of one year from the making thereof. We cannot assent to either proposition. The title to the land is not involved, nor is any interest or estate therein. The question arises on a lease supplemented by a parol contract with reference to the consideration. There is no controversy over the extent of the grant, and the parol contract does not undertake to lessen or enlarge the estate granted. Touching the division of the oil when brought to the surface, the written lease stipulates that the lessees shall yield and pay ‘to the lessor the one-sixth part of the oil produced and saved from the premises, delivered free of expense into the tanks or pipe line to the lessor’s credit * * V
“* * * In Kelley v. The Ohio Oil Co., 57 Ohio St., 317, this court held that petroleum oil is a mineral, and while it is in the earth, it forms part of the realty; and when it reaches a well and is produced on the surface, it becomes personal property and belongs to the owner of the well. In the opinion by Burket, J., on page 328, it is said: ‘Petroleum oil is a mineral, and while in the earth it is part of the realty, and should it move from place to place by percolation or otherwise, it forms part of the tract of land in which it tarries for the time being, and if it moves to the next adjoining tract, it becomes a part and parcel of that tract; and it forms part of some tract, until it reaches a well and is raised to the surface, and then for the first time it becomes the subject of distinct ownership separate from the realty, and becomes personal property, the personal property of the person into whose well. *89 it came. * * * It is the property of, and belongs to the person who reaches it by means of a well and severs it from the realty and converts it into personalty.’ ”
Applying the statutes above quoted to the terms of the granting instrument here under consideration as it deals with the peculiar character of the property to which it relates, this court is of the view that the instrument in question is a license rather than a deed of conveyance. Section 8518, General Code, seems to have specific application to the instrument in question. The language is plain. “All leases and licenses * * * given * * * for, upon, or concerning lands or tenements in this state, whereby any right is given or granted to operate, or to sink or drill wells thereon for natural gas and petroleum or either, or pertaining thereto, shall be filed for record, * * * and recorded in such lease record.” (Italics supplied.)
In the early case of Northwestern Ohio Natural Gas Co. v. City of Tiffin, 59 Ohio St., 420, 54 N. E., 77, this court in construing Section 4112a, Revised Statutes (now Section 8518, General Code), said:
“This statute * * * applies to all oil and gas leases and licenses, including those entered into prior, as well as subsequent, to the first day of September, 1888, makes special provision with respect to their registration, and prescribes the consequences of omission to have them recorded as required. It is a settled rule of construction, that special statutory provisions for particular cases operate as exceptions to general provisions which might otherwise include the particular cases, and such cases are governed by the special provisions. Under that rule this statute takes leases and licenses to which it is applicable out of the operation of Sections 4112 and 4134, Revised Statutes, and itself furnishes the rule governing the registry of such instruments, and the effect upon their validity of the failure of registration.” (Italics supplied.)
*90 The recording of the instrument in question in the record of leases was sufficient to constitute constructive notice of the existence, operation and effect of the instrument to the plaintiff as a subsequent purchaser of the land in question.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Middleton, Taft, Matthias, Zimmerman and Stewart, JJ., concur.